IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHY MOLLINEA, on behalf of herself
and all others similarly situated,

        Plaintiff,

    vs.

HIGHMARK, INC. (d/b/a Highmark
BlueCross Blue Shield, Highmark Blue
Shield and/or Highmark Health Plan) and
HIGHMARK HEALTH,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:24-1572

## MEMORANDUM OPINION

Plaintiff Cathy Mollinea ("Mollinea") brings this putative class action against Defendants Highmark, Inc. and Highmark Health (collectively, "Highmark" except as otherwise noted). She alleges that she and members of the proposed class were not paid commissions for all of their sales of Highmark, Inc. health insurance policies. Mollinea did not have a contract with Highmark for the payment of commissions. Rather, she was paid through middlemen, as described below. Her First Amended Complaint ("FAC") (ECF No. 29) asserts claims of unjust enrichment and "money had and received."

Presently pending before the Court is Highmark's renewed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7). Highmark argues that Mollinea's claims should be dismissed because she failed to join certain necessary and indispensable parties.

For the reasons that follow, Highmark's motion will be denied.

### I. Procedural History

On May 10, 2024, Mollinea filed a Complaint (ECF No. 1) in the United States District Court for the District of Arizona that asserted claims for breach of contract, breach of third-party

beneficiary contract, breach of the duty of good faith and fair dealing, unjust enrichment, and negligence.[1] Highmark moved to dismiss on several grounds. The Arizona District Court found that it lacked personal jurisdiction over Highmark but denied the motion to dismiss and granted Mollinea's motion to transfer the case to this Court. After Highmark sought to renew the arguments that it claimed the Arizona District Court did not reach, Mollinea sought and was granted leave to file the FAC, which as noted above, asserts claims of unjust enrichment (Count I) and money had and received (Count II).

Highmark then moved to dismiss the FAC (ECF No. 34) based on three arguments: (1) under Federal Rules of Civil Procedure 12(b)(7) and 19, Mollinea failed to join "necessary and indispensable parties"; (2) under Rule 12(b)(6), she could not state claims for relief under theories of unjust enrichment and money had and received when her commissions are paid pursuant to contracts; and (3) under Rule 12(f), her class action allegations should be stricken because the class she attempted to define was "unascertainable."

On July 21, 2025, the Court issued a Memorandum Opinion (ECF No. 50) and Order (ECF No. 51) that denied the 12(b)(6) motion; denied without prejudice the Rule 12(f) motion; and denied without prejudice the motion under Rules 12(b)(7) and 19, adding that Highmark could renew the motion at a later time.

Highmark now renews its motion to dismiss based on failure to join necessary and indispensable parties (ECF No. 75). It argues that: (1) General Agencies Emerson Reid, Kistler Tiffany, and Ritter and Agency HealthMarkets are necessary parties to this proceeding; (2) joinder

---

[1] Subject matter jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because Mollinea alleges a class involving more than 100 members in which the amount in controversy exceeds the sum of $5,000,000 and at least one member of the class is a citizen of a state different than Defendants. (FAC ¶ 10.)

of HealthMarkets is not feasible because its contract with Mollinea requires arbitration of disputes regarding her commissions and Plaintiff's arbitration proceeding is pending against HealthMarkets; (3) joinder of Ritter is not feasible because its contract with Mollinea requires that suit be brought in state or federal court in Dauphin County, Pennsylvania; and (4) HealthMarkets and Ritter are indispensable parties because complete relief cannot be afforded to all parties without their presence in this action. Therefore, they argue, all of Mollinea's claims should be dismissed.

Mollinea disputes that any of the middlemen are necessary parties and asserts that full relief can be achieved without them.

Highmark's motion has been fully briefed (ECF Nos. 76, 86, 89).

## II.   Relevant Facts

According to the FAC, Mollinea is a licensed insurance agent who, since 2016, has sold thousands of Highmark insurance policies under the Affordable Care Act across multiple jurisdictions. Highmark advertised and/or promised to pay a commission for each insurance policy that an agent sold. But Mollinea claims that Highmark did not pay her commissions, or those of other class members, for all insurance policies sold. Instead, they either failed to pay commissions earned or wrongfully clawed back these commissions. (FAC ¶¶ 13-19.) Mollinea alleges that, as a result, Highmark was unjustly enriched regarding sales of its policies because they have unfairly retained all the proceeds, including the commissions owed to her and the other class members. (*Id.* ¶¶ 20-22.)

Highmark asserts that it does not directly pay commissions to Retail Producers like Mollinea for policies sold. Rather, a Retail Producer enters into an agreement with a general

insurance agency or other entity regarding the payment of commissions.[2] Mollinea entered into agreements with two "General Agencies," Kistler Tiffany and Ritter, and with one "Agency," HealthMarkets. (Mountain Decl. ¶¶ 7-8) (ECF No. 77 Ex. 1.) Separately, Highmark entered into contracts with Kistler Tiffany[3] and Ritter, which would pay Mollinea a commission after taking a portion of the amounts received from Highmark (often referred to as an "override"). Highmark also contracted with Emerson Reid, which paid HealthMarkets, which in turn paid a commission to Mollinea after these middlemen deducted their fees. (*Id.* ¶¶ 10-16.)[4]

Highmark's contract with Emerson Reid provides that Emerson Reid "shall be responsible for any and all compensation for business produced or services performed by General Employee Producers and Retail Producers." (ECF No. 77 Ex. 3 § 7.5.2.) Under its contract with Highmark, Emerson Reid is entitled to a portion of the payment received from Highmark when a Retail Producer like Mollinea sold an insurance policy. (*Id.* §§ 7.5.1, 7.5.2, 7.5.8.) Further, their agreement provides that Emerson Reid "shall indemnify and hold Highmark harmless for any and all claims asserted against Highmark by General Employee Producers or Retail Producers for the payment of commissions." (*Id.* § 7.5.2.) The same provisions appear in Highmark's contracts with

---

[2] Mollinea acknowledges that Highmark uses middlemen who were paid directly by Highmark and in turn, the middlemen forwarded commissions to her and other members of the putative class. (*Id.* ¶ 2.)

[3] Highmark states that, from 2021 to 2024, any commissions that Mollinea received regarding the sale of Highmark, Inc. policies were paid by Kistler Tiffany. (Mountain Decl. ¶ 17.)

[4] In addition to the declaration of Ashley Mountain which is part of its appendix in support of its motion to dismiss, Highmark also attempts to rely on statements made in Mollinea's original complaint as an "item appearing in the record of this case." (ECF No. 76 at 2 n.3.) As the Third Circuit has held, however, "at the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint." *West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 173 (3d Cir. 2013).

Kistler Tiffany (ECF No. 77 Ex. 5 §§ 7.5.1, 7.5.2, 7.5.8) and with Ritter (ECF No. 77 Ex. 7 §§ 7.5.1, 7.5.2, 7.5.8.)

In Mollinea's contract with HealthMarkets, she assigned and authorized HealthMarkets "to receive any and all commissions or other compensation from Insurance Companies as a result of the sale of Policies." (ECF No. 77 Ex. 2 § VIII ¶ 1.) Their agreement further states that "any Commissions or other compensation payable to [Mollinea] under this Contract shall paid to [her] or credited to [her] account only by [HealthMarkets] and . . . no Insurance Company shall be responsible for the payment of Commissions or other compensation related to the Policies." (*Id.* ¶ 4.)

The HealthMarkets/Mollinea contract provides that any dispute with respect to monetary obligations must be submitted to arbitration. (*Id.* § XI ¶ 1.) According to Highmark, Mollinea commenced an arbitration against HealthMarkets with the American Arbitration Association regarding purported unpaid commissions, including the Highmark commissions at issue here, which remains pending at this time.[5] An order issued by the arbitrator in that proceeding on June 4, 2024 vacated all deadlines and directed the parties to file a joint status report every three months "informing the Arbitrator of the status of the federal court matter." (ECF No. 77 Ex. 4.)

Mollinea asserts that this endeavor "was fruitless, and nothing was recovered, because the [General Agencies] asserted that they did not receive payment for the commissions from Highmark and they are only obligated to 'pay when paid.'" (Weiler Decl. ¶ 5) (ECF No. 86 Ex. 1.) She believes that she has no recourse against the General Agencies for her commissions since they did not receive funds for her policy sales from Highmark. She also claims that she does not seek any

---

[5] Highmark "received separate information requests from HealthMarkets, Emerson Reid, and Mollinea relating to the arbitration." (Mountain Decl. ¶¶ 18-19.)

relief from the General Agencies for amounts that were not paid to them by Highmark. (*Id.* ¶¶ 7, 10.)

Mollinea's contract with Ritter similarly assigned her right to collect commissions to Ritter. (ECF No. 77 Ex. 6 § 7.A.) The contract provides that: "Ritter shall not be responsible to pay any commissions to [Mollinea] for any commissions where Ritter does not receive compensation from the Insurance Company." (*Id.* § 7(C).) Finally, the contract provides that: "The parties agree that with respect to any disputes, actions, suits or proceedings arising in connection with this Agreement[,] venue will be in the Commonwealth of Pennsylvania in either the federal district court or the court of common pleas located in Dauphin County." (*Id.* § 14.)[6]

## III.    Legal Standard

Rule 12(b)(7) allows a party to assert the defense of failure to join a party under Rule 19. Rule 19 provides in relevant part as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

***

---

[6] Dauphin County is in the Middle District of Pennsylvania. 28 U.S.C. § 118(b).

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

     (A) protective provisions in the judgment;

     (B) shaping the relief; or

     (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(a, b).

In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. At the same time, "[a] court making a Rule 19 determination may consider evidence outside the pleadings." *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009).

The Court of Appeals has stated that: "the best reading of Rule 19 settles into three steps: 1) Considering the qualifications under Rule 19(a)(1)(A) and (a)(1)(B), should the absent party be joined?; 2) If so, is joinder feasible—that is, can the party be joined without depriving the court of the ability to hear the case?; 3) If joining the party is not feasible, should the action continue in the party's absence or be dismissed?" *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 232 (3d Cir. 2023) (citations omitted). *See also Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993). The party seeking to add a necessary party

under Rule 19 "bears the burden of showing why an absent party should be joined." *Disabled in Action of Pa. v. SEPTA*, 635 F.3d 87, 97 (3d Cir. 2011). "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." Raising the Defense of Failure to Join a Required Party, 7 Fed. Prac. & Proc. Civ. § 1609 (3d ed.).

## IV.    Analysis

"Courts treat clauses [(a)(1)(A)] and [(a)(1)(B)] in the disjunctive just as the rule phrases them." *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). The first clause asks whether complete relief can be accorded "on the basis of those persons who are already parties," *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996). The second clause requires a court to decide whether determination of the rights of the parties before it would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation. *Janney Montgomery Scott,* 11 F.3d at 405, or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

### 1.    Analysis Under Rule 19(a)(1)(A)

When examining whether "complete relief can be accorded to the parties to the action in the absence of the unjoined party[,] . . . the inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action." *Janney Montgomery Scott,* 11 F.3d at 405. Notably, "[t]he effect a decision may have on the absent party is not material." *Id. See also General Refractories,* 500 F.3d at 313 ("we necessarily limit our Rule 19(a)(1) inquiry to whether the district court can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial.")

While Highmark argues that the General Agencies are necessary parties with respect to Mollinea's claims under both (a)(1)(A) and (a)(1)(B), it does not contend that complete relief could not be available to the existing parties without joining the middlemen in this case. As Mollinea observes, either Highmark owes commissions to her or it does not, and no other parties are needed to resolve this question. *See Pittsburgh Logistics Sys.*, 669 F. Supp. 2d at 618 (denying motion in part because the complaint "does not state any allegations against the Absent Parties").

Highmark's argument is based on the possibility that if Mollinea prevails, the General Agencies would then bring suit or would otherwise be entitled to their portion of sales attributed to Mollinea. This is not the standard under Rule 19(a)(1)(A), however. Complete relief can be obtained in this lawsuit between Highmark and Mollinea—either Highmark has been unjustly enriched by Mollinea's sales of Highmark policies to Mollinea's detriment, or it has not. Highmark's conjecture about what might happen in a subsequent proceeding does not compel the conclusion that this action must be dismissed.

Highmark has failed to show that complete relief cannot be achieved between the two parties in this action unless the relevant agencies are joined. Thus, the General Agencies are not necessary parties under Rule 19(a)(1)(A).[7]

2.  Analysis Under Rule 19(a)(1)(B)

Rule 19(a)(1)(B) requires joinder of a person who claims an interest relating to the subject matter of the lawsuit if disposing of the action in the person's absence may impair that person's ability to protect that interest or would leave an existing party at risk for inconsistent obligations because of that interest. In addressing these issues, the Third Circuit discussed the focus of Rule

---

[7] Highmark has not cited—and this Court's independent research has not found—a case in which a plaintiff sued to collect money allegedly owed and the middlemen were determined to be necessary parties to the action, much less that the action could not proceed in their absence.

9

19(a)(1)(B):

> The second prong of (a)(1)(B) focuses on the obligations of named parties, not absent parties. *See, e.g., Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1347 (6th Cir. 1993); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 n. 15 (9th Cir.1983). Further, an unsubstantiated or speculative risk will not satisfy Rule 19(a) criteria—the possibility of exposure to multiple or inconsistent obligations must be real. See 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1604, at 64 (3d ed. 2001).

*Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa.*, 385 F. App'x 135, 145 (3d Cir. 2010).

It is therefore necessary to first analyze whether a determination of the rights of Highmark and Mollinea would impair the absent General Agencies from protecting their interests in the subject matter of this litigation.

"Under [Rule 19(a)(1)(B)(i)], a party is only necessary if it has a legally protected interest, and not merely a financial interest, in the action." *Liberty Mutual Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005). Highmark argues that "parties owning rights under disputed contracts . . . generally have a legally protected interest under Rule 19(a)(1)(B)(i)." *Epsilon Energy*, 80 F.4th at 233. In *Epsilon Energy*, Epsilon, a natural gas developer, sued Chesapeake for breach of contract and declaratory relief under joint operating agreements ("JOA") when Chesapeake opposed Epsilon's proposal to engage in a gas development project known as the Craige Wells. An issue arose about whether the absent co-signatories to the JOAs were necessary parties to the suit.[8] The

---

[8] Although Rule 19(a)(1)(B)(i) speaks in terms of an absent party claiming an interest in the subject of the action and the Absent JOA Parties never offered a position on the issue, the court said that it could, "on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below." 80 F.4th at 233 (citation omitted). *But see Vertical Bridge REIT, LLC v. Everest Infrastructure Partners, Inc.*, 2025 WL 563752, at *8 (W.D. Pa. Feb. 20, 2025) ("The plain language of Rule 19(a)(1)(B)(i)—that a person required to be joined is one who 'claims an interest'—gives this Court serious pause in considering the Everest Defendants' arguments on the absent Landlords' behalf under the Rule.")

10

court found that the Absent JOA Parties were necessary parties since proceeding with drilling could affect their respective interests. 80 F.4th at 233.[9]

Yet "calling all contractual parties necessary and indispensable under Rule 19" is a "bright-line rule [that] is incompatible with the 'abundant case law' supporting Rule 19's application on a 'case by case basis.'" *Estate of Plott v. Department of Health & Hum. Servs.*, 151 F.4th 848, 854 (6th Cir. 2025). *See also Janney Montgomery Scott*, 11 F.3d at 402 ("the sole signatory to the contract Janney sued on" was not a necessary party to the action). This Rule does not apply unless, "as a practical matter," the absent party's ability to protect the interest is threatened. Fed. R. Civ. P. 19(a)(1)(B)(i). A party's ability to protect its interest is not threatened by mere "persuasive precedent" — that is, "the potential effect [stare decisis] might have on an absent party[ ]" in a future lawsuit." *Janney Montgomery Scott,* 11 F.3d at 407.

Mollinea notes that the General Agencies are aware of this litigation and to date, have not taken any affirmative steps to protect their interests. At any rate, the resolution of this lawsuit would not, as a practical matter, impede the General Agencies' ability to protect their interests. Mollinea has no contractual relationship with Highmark and her claim is based on unjust enrichment, not breach of contract. By contrast, each of the General Agencies is party to a separate contract with Highmark. Regardless of which party prevails in this lawsuit, claims that could later asserted by any of the General Agencies would be based on their respective contractual relationship with Highmark. If Mollinea proves her unjust enrichment claim, that may, or may not, support a claim brought by a General Agency. And a resolution in favor of Highmark on Mollinea's unjust

---

[9] Ultimately, the court determined that the district court did not meaningfully address two of the four factors identified in Rule 19(b) and remanded the case for the court to determine whether the action should proceed among the existing parties or be dismissed. *Id.* at 234-35.

11

enrichment claim will not impair the ability of a General Agency to assert a breach of contract claim, assuming such a claim exists.

Highmark also claims that absent joinder of these parties, it "would be at risk of incurring double, multiple, or inconsistent obligations relating to the payment of commissions." (ECF No. 76 at 12.) *See* ECF No. 89 at 2 ("if it is determined that [Mollinea] is owed amounts, that necessarily means that certain Agencies to whom [she] assigned her commissions (like HealthMarkets) have an entitlement to those same amounts.")

While Highmark references certain provisions of the contracts with the General Agencies, they are not relevant to the issues raised by Mollinea raises. The contracts have not been placed "in dispute" based on Mollinea's allegation that Highmark received a benefit for policies she sold but unjustly failed to compensate her for these sales. Indeed, as noted above, Highmark's contracts with the General Agencies require those parties to indemnify and hold Highmark harmless for claims asserted by Retail Producers with respect to the payment of commissions. Under these provisions, Highmark is not precluded from attempting to join these parties under Rule 14[10] or subsequently asserting claims against them if it is found liable in this action.[11] But neither scenario requires that they be joined in this action in order to resolve the issue of whether Highmark was unjustly enriched by Mollinea's sales of its policies.

In any event, a claim that a party is necessary because another party will lose the right to contribution or indemnity has been rejected by the Court of Appeals: "Though federal civil practice . . . permits a party defendant who claims a right of contribution or indemnity from third persons

---

[10] The Court makes no finding regarding whether any of these parties can be joined.

[11] While Mollinea has restrictions on her ability to commence an action in this Court against some of the middlemen, Highmark is not bound by these restrictions.

to protect itself from potentially inconsistent verdicts by impleading the absent party under Federal Rule of Civil Procedure 14, it is not required to do so; and, if it does not, its right to bring a separate action for contribution or indemnity is unaffected." *Janney Montgomery Scott*, 11 F.3d at 412. Thus, "a defendant's potential loss of its right to contribution from an absent party did not subject it to multiple liability within the meaning of Rule 19." *Id.*

Highmark contends that it is not arguing that the General Agencies would be liable for contribution or indemnity. Rather, it argues that an adjudication that it owes amounts to Mollinea necessarily results in a legal determination that the General Agencies owed amounts to Mollinea since the Agencies are "solely responsible" for paying her commissions. But Mollinea has explicitly disclaimed any interest in seeking amounts from the General Agencies, which would constitute a double recovery in any event.

In response to Highmark's argument that the General Agencies are "solely responsible" for paying her commissions. Mollinea notes that the General Agencies have no obligation to pay her unless and until they are paid by Highmark. *See* Mountain Decl. ¶ 12 ("*After* receiving amounts from Highmark . . . General Agencies pay commissions to Retail Producers pursuant to the agreement between the General Agency and the Retail Producer") (emphasis added). Mollinea has alleged that because Highmark did not pay the General Agencies for the amounts she is claiming, they had no obligation to pay her.[12]

Thus, Highmark has not shown that the General Agencies are necessary parties under Rule 19(a)(1)(B).

Because Highmark has failed to demonstrate that the General Agencies are necessary

---

[12] In its reply brief, Highmark contends that this allegation is "without any factual support" and incorrect (ECF No. 89 at 1), but at this stage of the proceedings, the Court must accept Mollinea's allegation as true.

parties under Rule 19(a), the Court need not reach the question of whether these parties can be joined, or in their absence, "in equity and good conscience," the case should be dismissed. *Janney Montgomery Scott*, 11 F.3d at 413. *See also Culinary Serv.*, 385 F. App'x at 145 ("A holding that joinder is compulsory under Rule 19(a) is a necessary predicate to the district court's discretionary determination under Rule 19(b).")

## V.   <u>Conclusion</u>

For the reasons explained above, Defendants' renewed motion to dismiss will be denied. An appropriate order follows.

Dated: July 2, 2026

BY THE COURT:

/s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge